# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **RICHARD BERRY**,<br>**d/b/a CLOV-LAN FARMS,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**ULRICH HEREFORD RANCH, INC., et al.,**<br><br>        **Defendants.** | **Case No. 17-2109-JTM-GEB** |

## MEMORANDUM AND ORDER

This matter is before the Court on the Motion to Stay Discovery, filed by defendants Lilybrook Herefords, Inc., Andy Schuepbach, Hans Ulrich, Claresholm Veterinary Services, Ltd., and Balog Auction Services, Inc. (**ECF No. 39**). On June 2, 2017, the Court held a telephone hearing to discuss the pending motion. Participating were the following counsel:

- Richard Rhyne and Landon Magnusson (for Plaintiff);
- Catherine Theisen (for Ulrich Hereford Ranch, Inc.and Peter Ulrich);
- Meghan Lewis and Stephen Murphy (for Lilybrook Herefords, Inc; Andy Schuepbach, and Hans Ulrich);
- Matthew Geiger (for Claresholm Veterinary Services, Ltd.); and
- Michael Brown and Leilani Leighton (for Balog Auction Services, Inc.).

After review of the parties' briefing and considering the arguments of counsel, Defendants' Motion to Stay is **GRANTED in part and DENIED in part** as explained below.

## I.    Background[1]

This litigation arises from the sale of cattle, originating from Canada, to a Kansas rancher.  Defendant Hans Ulrich was the original owner and operator of Ulrich Hereford Ranch, Ltd., in Alberta, Canada, when in 2002, in some disputed fashion, he divided his business between his son and son-in-law.  This division gave rise to two new business entities:  1) Ulrich Hereford Ranch, Inc., operated by his son, Peter Ulrich (referred to as the "Ulrich defendants"); and 2) Lilybrook Herefords, Inc., operated by Hans' son-in-law Andy Scheupbach (referred to as the "Lilybrook defendants").  Although the extent of Hans Ulrich's continued interest and control over either entity is disputed, in both the pleadings and currently pending motions in this matter, Hans Ulrich is also generally referred to as one of the Lilybrook defendants.

In late 2014, plaintiff Richard Berry, doing business as Clov-Lan Farms in Franklin County, Kansas, contacted Peter Ulrich to inquire about purchasing cattle.  Although Plaintiff initially agreed to purchase cattle from both the Lilybrook and Ulrich operations, the agreement with Lilybrook was terminated for disputed reasons.  Plaintiff claims Andy Scheupbach told him to purchase all of his desired cattle from the Ulrich defendants, based on the relationships between the defendant ranchers and the cattle herds.  Plaintiff further contends the Ulrich and Lilybrook defendants work together to

---

[1] Unless otherwise indicated, the information recited in this section is taken from the pleadings (Pl.'s Compl., ECF No. 1; Am. Compl., ECF No. 26; Ulrich Defs.' Answer to Am. Compl., ECF No. 34; Ulrich Defs.' Am. Answer, ECF No. 41; Pl.'s Answer to Counterclaim, ECF No. 53); from the pending dispositive motions (ECF Nos. 18, 27, 29, 31); and from the briefs regarding Defendants' Motion to Stay (ECF Nos. 39, 40, 48).  This background information should not be construed as judicial findings or factual determinations.

build and maintain their respective herds. The ranching defendants deny those claims. However, the parties agree Plaintiff ultimately received just over 100 head of cattle, over three shipments, from the Ulrich defendants.

Of those cattle Plaintiff purchased from the Ulrich defendants, he bought nine of them—registered breeding bulls—through a public sale administered by defendant Balog Auction Services, Inc. Plaintiff contends Balog vouched for the quality of those bulls through its auction advertising. All of the cattle Plaintiff purchased from the Ulrich defendants were inspected by Claresholm Veterinary Services, Ltd., prior to export, and Claresholm issued a Veterinary Health Certificate for each shipment.

Plaintiff claims the cattle were obviously in poor condition on their arrival to his ranch. Many of the animals lost significant weight soon after their arrival and generally failed to thrive, and a number of the cattle died. Because the cattle were unfit to breed and raise for economic benefit, Plaintiff sold the surviving cattle. In his eight-count Amended Complaint (ECF No. 26), Plaintiff asserts a breach of contract claim against the Ulrich defendants; fraud and negligent misrepresentation claims against the Ulrich and Lilybrook defendants; and negligent misrepresentation and negligence claims against both Claresholm and Balog. Plaintiff seeks damages in the form of actual expenses, lost future profits, and punitive damages.

The Ulrich defendants filed a Counterclaim against Plaintiff for breach of contract and unjust enrichment. They claim Plaintiff failed to pay them in full, failed to provide reasonable care for the cattle or to properly insure the cattle, and failed to use the proceeds from sales of the cattle to pay the Ulrich defendants.

## II. Procedural Posture

The Ulrich defendants answered Plaintiff's initial Complaint and Amended Complaint and asserted their counterclaims (ECF Nos. 34, 41). Plaintiff disclosed his expert witnesses under Fed. R. Civ. P. 26(a)(2) (ECF No. 46), served his initial disclosures (ECF No. 47), and all parties, at Plaintiff's urging, participated in a Rule 26(f) planning conference.[2] However, excluding the Ulrich defendants, all five remaining defendants filed motions to dismiss, based on jurisdictional concerns.[3]

Both Claresholm and Balog seek dismissal under Rule 12(b)(2), claiming this Court lacks personal jurisdiction over the entities. Each maintains it had no contract or relationship with Plaintiff, lacks minimum contacts with Kansas, and the exercise of jurisdiction over either would offend traditional notions of fair play and substantial justice (see Motions, ECF Nos. 18, 27, 29). Likewise, the Lilybrook defendants also seek dismissal under Rule 12(b)(2), claiming they neither sold cattle to Plaintiff nor participated in Plaintiff's negotiations with the Ulrich defendants. The Lilybrook defendants claim to lack sufficient minimum contacts with Kansas, and that this Court's jurisdiction over them would be unreasonable (Motion, ECF No. 31). These pending dispositive motions led to the Lilybrook defendants, Claresholm, and Balog seeking a stay of discovery, which the Court now considers.

---

[2] The Report of Parties' Planning Conference was submitted to the Court by email from counsel on May 23, 2017 (maintained in Chambers' file).
[3] Defendant Claresholm filed an initial motion to dismiss for lack of personal jurisdiction (ECF No. 18), and after Plaintiff amended his Complaint, Claresholm refiled its dispositive motion (ECF No. 27). Balog Auction filed its motion to dismiss (ECF No. 29), and the Lilybrook defendants quickly followed suit (ECF No. 31).

## III.  Motion to Stay Discovery (ECF No. 39)

The five defendants seeking dismissal jointly filed their Motion to Stay Discovery, seeking to postpone all discovery, including initial disclosures, pending resolution of the dispositive motions.  They contend the motions to dismiss are likely to resolve Plaintiff's claims against them; discovery would not affect the decision on dismissal; and a stay would protect them from undue prejudice and expenses (Mem. Supp., ECF No. 40).  The Ulrich defendants did not formally respond to the motion to stay, although during the June 2 conference, Ms. Theisen reported the Ulrich defendants were not opposed to a stay of discovery.

### A.  Legal Standard

A decision on whether to stay litigation is within the Court's inherent power to control its docket and rests in its sound discretion.[4]  The Court may exercise that power in the interest of economy of time and effort for itself and for counsel and parties appearing before it.[5]  When discharging its discretion, the Court "must weigh competing interests and maintain an even balance."[6]  The Tenth Circuit has cautioned, "[t]he right to proceed

---

[4] *See Accountable Health Sols., LLC v. Wellness Corp. Sols., LLC*, No. 16-2494-DDC-TJJ, 2016 WL 4761839, at *1 (D. Kan. Sept. 13, 2016); *Universal Premium Acceptance Corp. v. Oxford Bank & Trust,* No. 02–2448–KHV, 2002 WL 31898217, at *1 (D. Kan. Dec. 10, 2002) (citing *Pet Milk Co. v. Ritter,* 323 F.2d 586, 588 (10th Cir. 1963)).
[5] *Universal Premium Acceptance Corp.*, 2002 WL 31898217, at *1 (citing *Landis v. N. Am. Co.,* 299 U.S. 248, 255 (1936)).
[6] *Pipeline Prods., Inc. v. Horsepower Entm't*, No. 15-4890-KHV-KGS, 2016 WL 1448483, at *1 (D. Kan. Apr. 13, 2016) (citing *Landis*, 299 U.S. at 255).

in court should not be denied except under the most extreme circumstances."[7]

Recognizing this overarching right to proceed, the general policy of the District of Kansas is to continue with discovery during the pendency of dispositive motions.[8] However, there are recognized exceptions to this rule. One such exception, which is not present in this case, applies where a defendant seeks dismissal based on absolute or qualified immunity.[9] When immunity is not at issue, the court considers whether any of the following three exceptions apply to make a stay of discovery appropriate:

1) where the case is likely to be finally concluded as a result of the ruling on the pending dispositive motion;
2) where the facts sought through uncompleted discovery would not affect the resolution of the motion; or
3) where discovery on all issues of the broad complaint would be wasteful and burdensome.[10]

The party seeking stay "must make a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else."[11]

---

[7] *Kendall State Bank v. Fleming*, No. 12-2134-JWL-DJW, 2012 WL 3143866, at *2 (D. Kan. Aug. 1, 2012) (citing *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.,* 713 F.2d 1477, 1484 (10th Cir.1983)).

[8] *Accountable Health Sols.*, 2016 WL 4761839, at *1 (citing *Wolf v. United States*, 157 F.R.D. 494, 495 (D. Kan. 1994)).

[9] *Id.*; *see also Fattaey v. Kansas State Univ.*, No. 15-9314-JAR-KGG, 2016 WL 3743104, at *1 (D. Kan. July 13, 2016) (citing *Kutilek v. Gannon*, 132 F.R.D. 296, 298 (D. Kan. 1990).

[10] *Accountable Health Sols.*, 2016 WL 4761839, at *1; *Randle v. Hopson*, No. 12-2497-KHV-DJW, 2013 WL 120145, at *1 (D. Kan. Jan. 9, 2013).

[11] *Landis*, 299 U.S. at 255; *see Accountable Health Sols.*, 2016 WL 4761839, at *1 (citing *Cargill Meat Sols. Corp. v. Premium Beef Feeders, LLC*, No. 13-1168-EFM-TJJ, 2015 WL 3937395, at *1 (D. Kan. June 26, 2015)).

## B. Discussion

The defendants seeking dismissal contend all three exceptions apply, making stay of discovery appropriate, including postponing scheduling and any exchange of Rule 26(a) disclosures. Plaintiff disagrees; arguing this case is unlikely to be concluded as a result of the pending dispositive motions. Plaintiff maintains some facts sought through discovery could affect the resolution of Defendants' motions to dismiss; and moving forward with scheduling and discovery would not be wasteful or burdensome. Both sides interpret the recognized exceptions in favor of their own position, and the Court examines each factor in turn.

### 1. Likelihood of Dismissal

If the case appears *likely* to be dismissed, discovery may be postponed. When considering this factor, both Plaintiff and the moving Defendants focus on the relative strengths of Defendants' jurisdictional arguments. Without opining as to the merits of any party's dispositive arguments—which will be decided by the District Judge—the Court notes each dispositive motion appears, on its face, to present at least colorable arguments in favor of dismissal. If *all* defendants had filed meritorious dispositive motions, this factor might weigh in favor of stay. However, all parties ignore the fact that the Ulrich defendants do *not* seek dismissal—therefore, regardless of the outcome of the current dispositive motions, this case will proceed in some fashion. While the Court recognizes that the defendants seeking dismissal may not ultimately remain in the case, it is conceivable that discovery from them, related to the case against the Ulrich defendants,

could be useful whether or not they remain parties.[12]  This factor, then, tips in favor of denying the request for stay.

### 2.  Necessity of Discovery for Motions to Dismiss

Plaintiff argued during the conference that, because the jurisdictional issues are fact-intensive, discovery may assist the court in deciding the dispositive motions. However, Plaintiff did not seek jurisdictional discovery, in lieu of dismissal, in his responses to the motions to dismiss.   In fact, Plaintiff's responses to the dispositive motions mention his prima facie "burden in demonstrating this Court's jurisdiction is based in its pleadings" and affidavits (ECF No. 43, at 4).  All pending dispositive motions are now ripe for decision, and it does not appear the Court will order any jurisdictional discovery before considering the motions.   Therefore, this factor weighs in favor of postponing discovery pending resolution of the dispositive issues.

### 3.  Burden or Waste Resulting from Proceeding with Discovery

Because this case will proceed, in some fashion, even if some defendants are dismissed, the Court has trouble finding discovery from any of these parties particularly wasteful—considering Plaintiff plans to seek information from all Defendants, regardless of the outcome.  It is conceivable that discovery will ultimately delve into the interplay between the actions of all current defendants, regardless of which defendants remain.

However, the moving Defendants present compelling arguments regarding the

---

[12] In fact, during the June 2 conference, Plaintiff revealed he plans to seek discovery from the Lilybrook defendants, as well as Claresholm and Balog, through alternate avenues, such as Rule 45 subpoenas, in the event they are dismissed.

potential burdens of discovery, which convince this Court that full-fledged discovery would be onerous pending resolution of the motions to dismiss. They focus on their locations in Canada and lack of contacts in Kansas, and how discovery—depositions in particular—could require costly travel by multiple counsel. This factor weighs in favor of at least a minimal stay.

## C. Conclusion

Exercising its discretion, and weighing Plaintiff's interest in proceeding with Defendants' arguments regarding potential burden, the Court finds a stay of full discovery appropriate. However, the Court does not find substantial prejudice in requiring all Defendants to provide their Rule 26(a) initial disclosures and exchange any documents identified therein. This should require no travel, particularly with today's technology, which will limit burden to Defendants. Permitting all parties to at least exchange disclosures will allow Plaintiff to assess the potential discovery lying with each party. Once the dispositive motions are decided, the case can then quickly proceed with scheduling and full discovery.

Although the Ulrich defendants presented no formal response to any pending motion, it is clear Plaintiff's case, as well as the Ulrich defendants' Counterclaim, will proceed regardless of the outcome of dispositive motions. However, the Court finds it inefficient to proceed with scheduling and full discovery only as to the Ulrich defendants, and will not order such progress while the remaining discovery is stayed. Plaintiff and the Ulrich defendants are free, and in fact, encouraged, to confer regarding discovery

which may be undertaken during the brief stay in addition to the initial disclosures, which could assist in moving the matter forward. The Court expects the parties will cooperate to minimize potential duplication, and to utilize discovery methods which minimize travel and other costs to both counsel and the parties pending final resolution of the motions to dismiss.[13]

**IT IS THEREFORE ORDERED** that Defendants' Motion to Stay (**ECF No. 39**) is **GRANTED IN PART**, in that the case will not proceed with full discovery until after the dispositive motions are resolved. However, the motion is **DENIED IN PART**, in that all parties are required to provide the initial disclosures and exchange of documents required under Fed. R. Civ. P. 26(a)(1)(A) no later than **June 30, 2017**. Following decision on the pending dispositive motions, the Court will set a telephone conference to address scheduling.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 9th day of June 2017.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge

---

[13] *See Accountable Health Sols., LLC*, 2016 WL 4761839, at *3.