IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RICHARD BERRY d/b/a CLOV-LAN FARMS,

plaintiff,

vs.                              Case No. 17-2109-JTM

ULRICH HEREFORD RANCH, INC., *et. al.*,

Defendants.

MEMORANDUM AND ORDER

Plaintiff Richard Berry, doing business as Clov-Lan Farms, purchased nine heads of cattle from defendant Peter Ulrich at an auction in Alberta, Canada. Plaintiff alleges that the cattle were sick and unhealthy and is suing to recover damages from the defendants.

The court now takes up the following motions: Defendants Lilybrook Herefords, Inc., Andy Schuepbach, and Hans Ulrich's, (Lilybrook, Schuepbach, and Hans Ulrich are collectively referred to as "Lilybrook Defendants") Motion to Dismiss Plaintiff's Complaint for Failure to Establish Personal Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(2)   (Dkt. No. 31); defendant Claresholm Veterinary Services, LTD.'s   ("CVS") Motion to Dismiss Plaintiff's Complaint for Failure to Establish

Personal Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(2) (Dkt. No. 18); and defendant Balog Auction Services, Inc.'s ("Balog") Motion to Dismiss Plaintiff's Complaint for Failure to Establish Personal Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(2) (Dkt. No. 29). For the following reasons, the court grants the defendants' motions.

## I.    Factual Background

Plaintiff, Richard Berry d/b/a Clov-Lan farms, is a Kansas resident who purchased nine bulls at a live cattle auction on February 23, 2016.  Before this purchase, plaintiff had approximately twenty telephone conversations, and exchanged approximately eighteen emails, with Schuepbach. Plaintiff, Lilybrook Herefords, and Schuepbach ultimately agreed to purchase Lilybrook cattle. Plaintiff made a $10,000 down payment on December 23, 2014. The parties subsequently rescinded the contract and plaintiff was refunded the down payment. During this series of events, Schuepbach told Berry about Ulrich Hereford Ranch cattle.

The details of the conversation between plaintiff and Schuepbach are disputed. Plaintiff contends Schuepbach made assurances of quality that induced him to purchase cattle from Peter Ulrich and Ulrich Hereford Ranch; Schuepbach contends he informed plaintiff that Ulrich's cattle descended from the same cowherd as Lilybrook's animals and categorically denies he ever made any representations about the quality, health,

soundness, or merchantability of Ulrich's cattle. For the purposes of resolving the motion to dismiss, the court assumes Berry's recitation is correct.

Lilybrook is a Canadian corporation that raises and sells purebred Hereford cattle with its principal place of business in Claresholm, Alberta, Canada. Both Schuepbach and Hans Ulrich are Canadian citizens who reside in Claresholm, Canada. Neither Schuepbach nor Hans Ulrich own or lease any real or personal property in Kansas, have bank accounts or lines of credit in Kansas, owe or paid taxes in Kansas, or have a mailing address or telephone listing in Kansas. Additionally, Lilybrook has never registered to do business in Kansas, had a registered agent in Kansas for service of process, had any offices or employees outside of Canada, maintained an office, facility, or location in Kansas, had any employees, agents, sales people, personnel, or representatives that worked or lived in Kansas, done business in Kansas as a partner or joint venture' purposefully directed any mass solicitations or advertisements to Kansas, or leased any property in Kansas.

During 2015 and 2016, Peter Ulrich requested CVS to look over his cattle in Alberta, Canada. The inspection was conducted in Alberta and an invoice was sent to Peter Ulrich for the services. CVS is a small and large animal clinic based in Claresholm, Alberta, Canada. CVS regularly does business with Peter Ulrich and Ulrich Hereford Ranch.

Balog is a resident of Alberta, Canada, with its primary place of business in Lethbridge, Alberta, Canada. Balog proclaims itself as "one of the most successful Purebred Livestock Auctioneer's [sic] on the Continent." It sells items through its

auction service to five Canadian Provinces and thirteen States in the United States of America. Every Thursday, Balog conducts a live video cattle auction on the website "dmls.ca." Direct Livestock Marketing Services, ("DLMS") is a Canadian-registered website that is owned by a third-party that is neither a subsidiary nor a company related to Balog.

While using DLMS's website during an auction, a buyer is able to hear and watch the auction in real time, to read specific weight, age, gender, breed, and breeder information about each cattle sold, make bids in real time, and to watch as other buyers bid on the cattle. Balog's goal is "to bring the entire world into your corral." Prior to the February 23, 2016 auction, DLMS was retained by Ulrich Hereford Ranch to assist with the auction.

On that date, Ulrich Hereford Ranch sold fifty bulls through Balog. Plaintiff was unable to personally attend, so he attempted to place bids through the DLMS owned website. Plaintiff was unsuccessful in making any bids through the DLMS website, and at the time, Balog was unaware of plaintiff's failed attempt. Plaintiff, still trying to bid, called DLMS on the telephone. Whitney Bosovich, a DLMS employee, was present at the auction and took plaintiff's call. Plaintiff directed DLMS to place bids on cattle and Peter Ulrich approved this procedure.

Plaintiff was able to successfully bid by telephone and was the highest bidder on nine bulls. Payment for the bulls was to be made directly to Peter Ulrich or Ulrich Hereford Ranch. Balog was not involved in any way with payment. Balog first spoke with plaintiff nine months after the auction when plaintiff called to complain about the

livestock he had purchased. Plaintiff alleges that Balog endorsed the cattle sold by Peter Ulrich and Ulrich Hereford Ranch, Inc. in widely distributed advertising material which stated that the cattle are "high quality performance cattle," "a powerful set of bulls," and "will make a difference and move your program to a higher bracket."

Lilybrook Defendants did not receive any money or any other benefit from the sale of cattle by Peter Ulrich or Ulrich Hereford Ranch. Additionally, Ulrich Hereford Ranch, Inc., Peter Ulrich, and the Lilybrook Defendants had not agreement regarding the sale of cattle to plaintiff. Plaintiff did not ask for CVS to perform any services. Each animal was subjected to an inspection where a veterinarian was required to certify, among other things, that the vet had personally inspected each animal in the shipment and that each was "free from any evidence of communicable disease." Dr. Connie Fancy, on behalf of CVS, inspected each shipment of cattle Peter Ulrich and Ulrich Hereford Ranch, Inc. sent to Clov-Lan.

CVS contends it never believed the inspection of cattle in Alberta, Canada would require defending a court case in Kansas; plaintiff, however, contends that each veterinary health certificate completed for every shipment of cattle from Peter Ulrich and Ulrich Hereford Ranch, Inc. to Clov-Lan indicated that the cattle were being sent to Clov-Lan in Pomona, Kansas. For the purposes of resolving the motion to dismiss, the court assumes that the latter is correct.

Plaintiff does not convert that CVS is not registered to do business in Kansas, does not conduct business in Kansas, has never applied for a certificate of authority to conduct business in Kansas, does not maintain a registered agent for service of process

in Kansas, does not pay taxes in Kansas, does not have any offices in Kansas, does not have any employees, agents, distributors, bank accounts, property, advertise, market or supply any goods in Kansas.      Plaintiff accuses Lilybrook Herefords, Inc., Andy Schuepbach, and Hans Ulrich of fraud and negligent misrepresentation by making assurances concerning the quality of Peter Ulrich Hereford Ranch, Inc.'s cattle, thereby inducing plaintiff to purchase the cattle. Plaintiff further claims CVS negligently inspected the cattle and made negligent misrepresentations about their health. Finally, plaintiff alleges Balog negligently injured plaintiff and made negligent misrepresentations as to the health of the cattle.

## II. Conclusions of Law

A. *Personal Jurisdiction Over Lilybrook Herefords, Inc., Andy Schuepbach, Hans Ulrich, Claresholm Veterinary Services, LTD., and Balog Auction Services, Inc.*

### 1. Legal Standard

The standard governing a Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction is well established. The plaintiff bears the burden of establishing personal jurisdiction over the defendants. *Edison Trust Number One v. Patillo*, No. 10-1159, 2010 WL 5093831, at *1 (D. Kan. Dec. 8, 2010) (quotations omitted). The plaintiff must show that under the laws of the forum state jurisdiction is proper, and that exercising jurisdiction would not offend traditional notions of fair play and substantial justice. *Id.* The extent of the burden depends on the stage at which the court considers the jurisdictional issue. *Id.* at 1. The plaintiff's burden in the preliminary stages of litigation

is light and the plaintiff must make a prima facie showing. *Dudnikov v. Chalk & Vermillion Fine Arts*, 514 F.3d 1063, 1069 (10th Cir. 2008); *Hutton & Hutton Law Firm, LLC v. Girardi & Keese*, 96 F. Supp. 3d 1208, 1215 (D. Kan. Mar. 31, 2015). This prima facie showing may be made by an affidavit or other written materials, that, if taken as true, support jurisdiction over the defendant. *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir.2007); *Shophar v. Kansas*, 2017 U.S. Dist. LEXIS 42390, *9 (D. Kan. Mar. 23, 2017). The defendant may defeat the plaintiff's prima facie showing of personal jurisdiction by presenting a "compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056 (10th Cir.2008) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).  In cases of a Motion to Dismiss for Lack of Personal Jurisdiction, all well-pled factual allegations in the plaintiff's petition that are uncontroverted are accepted as true and viewed in light most favorable to the plaintiff. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). If affidavits conflict, factual disputes must be resolved by the court in the plaintiff's favor, and a prima facie showing by the plaintiff, notwithstanding a contrary presentation by the moving party, is sufficient. *Ryan Transp. Servs., Inc. v. Fleet Logistics. L.L.C.*, Nos. 04-2445-CM, 04-2497-CM, 2005 U.S. Dist. LEXIS 24554, at *10 (D. Kan. Oct. 21, 2005) (quoting *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984)). Well-pled facts, as opposed to mere conclusory allegations, must be accepted as true. *Wenz*, 55 F.3d at 1505.

The test for personal jurisdiction first requires asking if any applicable statute authorizes service of process on the defendants. *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1070 (10th Cir. 2008). The second question is whether exercising statutory jurisdiction comports with the Fourteenth Amendment's constitutional due process demands. *Id.* Kansas law authorizes service of process pursuant ot a "long-arm" statute.[1] The statute corresponds directly with the intent of constitutional limitations

---

[1]Kan. Stat. Ann. ' 60-308(b) provides in part:

(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the following acts, thereby submits the person and, if an individual, the individual's representative, to the jurisdiction of the courts of this state for any claim for relief arising from the act:

(A) Transacting any business in this state;

(B) committing a tortious act in this state;

(C) owning, using or possessing real estate located in this state;

(D) contracting to insure any person, property or risk located in this state at the time of contracting;

(E) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state;

(F) acting in this state as director, manager, trustee or other officer of any corporation organized under the laws of or having a place of business in this state or as executor or administrator of any estate in this state;

(G) causing to persons or property in this state an injury arising out of an act or omission outside this state by the defendant if, at the time of the injury, either:

(i) The defendant was engaged in solicitation or service activities in this state; or

(ii) products, materials or things processed, serviced or manufactured by the defendant anywhere were used or consumed in this state in the ordinary course of trade or use;

(I) serving as insurer of a person at the time of an act by the person which is the subject of an action in a court of competent jurisdiction in this state which results in judgment being taken against the person;

(K) entering into an express or implied arrangement, whether by contract, tariff or otherwise, with a corporation or partnership residing or doing

imposed by the Fourteenth Amendment. *Federated Rural Elect Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994); *Jenkins-Dyer v. Drayton*, 2014 U.S. Dist. LEXIS 148130, *7-8 (D. Kan. Oct. 16, 2014). More precisely, if jurisdiction is consistent with due process, the long-arm statute of Kansas grants jurisdiction over a nonresident defendant. *Jenkins-Dyer,* 2014 U.S. Dist. LEXIS 148130, at *8.

The Fourteenth Amendment's Due Process Clause grants personal jurisdiction over a nonresident defendant when: (1) the defendant has such "minimum contacts" with the forum state that they reasonably should anticipate being haled into court there; and (2) if minimum contacts is established with the forum state, defending a lawsuit in the forum would not "offend traditional notions of fair play and substantial justice." *Dudnikov*, 514 F.3d at 1070. If jurisdiction is found to be lacking at any stage of the proceeding, the court must dismiss the case. *Scott v. Home Choice, Inc.*, 252 F. Supp. 2d 1129, 1132 (D. Kan. 2003) (citing *Castaneda v. I.N.S.*, 23 F.3d 1576, 1580 (10th Cir. 1994)).

---

business in this state under which the corporation or partnership has supplied transportation services or communication service or equipment, including telephonic communication services, for a business or commercial user when the services supplied to the user are managed, operated or monitored in this state, provided that the person is given reasonable notice that arranging or continuing the transportation services or communication services may result in jurisdiction under this section; or

(L)   having contact with this state which would support jurisdiction consistent with the constitutions of the United States and of this state.

(2)   A person submits to the jurisdiction of the courts of this state for a claim for relief which did not arise in this state if substantial, continuous and systematic contact with this state is established which would support jurisdiction consistent with the constitutions of the United States and of this state.

KAN. STAT. ANN. 60-308(b) (2016).

2.  Minimum Contacts; General Jurisdiction

The exercise of personal jurisdiction over a nonresident defendant complies with due process "so long as there exists 'minimum contacts' between the defendant and the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction may be either general or specific, depending upon the defendant's contacts with the forum state. *Bristol-Myers Squibb Co. v. Superior Court*, No. 16-466, 2017 U.S. LEXIS 3873, at \*10 (June 19, 2017). For a court to exercise general jurisdiction, the defendant's contacts with the forum state must be "'so continuous and systematic as to render [it] essentially at home in the forum State.'" *Fireman's Fund Ins. v. Thyssen Mining Constr. of Can.*, 703 F.3d 488, 493 (10th Cir. 2012) (quoting *Goodyear Dunlop Tires Operations v. Brown*, 131 S.Ct. 2846, 2851 (2011). *See also Hutton & Hutton Law Firm, LLC v. Girardi & Keese*, 96 F. Supp. 3d 1208, 1217 (D. Kan. 2015). The court may maintain general personal jurisdiction over a defendant based solely on the defendant's business contacts with the forum state, even if the defendant's forum-related activities would not otherwise give rise to jurisdiction by the court. *Id*.

When determining general jurisdiction, courts consider the following four factors: "(1) whether the corporation solicits business in the state through a local office or agent; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the

10

volume of business conducted in the state by the corporation." *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996). *See also Macedo v. Green Valley Chem. Corp.*, No. 11-2666-EFM, 2013 U.S. Dist. LEXIS 59197, at *13-14 (D. Kan. Apr. 25, 2013)

Pllaintiff's allegations do not show that the Lilybrook Defendants, CVS, or Balog do business in Kansas. All three are Canadian citizens without ties to Kansas. The Lilybrook Defendants, CVS nor Balog solicit business in Kansas through a local office or agents, send agents into Kansas on a regular basis to solicit business, hold themselves out as doing business in the forum state, through advertisement, listings, or bank accounts, or have much, if any, volume of business conducted in Kansas. Simply put, none of these three defendants could be considered "at home" in Kansas. *See Hutton & Hutton Law Firm*, 96 F. Supp. 3d at 1217.

Although there is a widely-disseminated advertisement containing a photograph of Hans Ulrich, Pete Ulrich, and comments by CVS, this is not enough to confer general jurisdiction. Several courts have found much more than a widely-disseminated advertisement insufficient to confer general jurisdiction. *See, e.g.*, *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1198-1200 (4th Cir. 1993) (finding no general jurisdiction over defendant employing 13 sales representatives and one district manager, which held district meetings three times a year, held regional meetings twice a year, and sold $9 to $13 million in products to forum residents); *Glater v. Eli Lilly & Co.*, 744 F.2d 213, 216-17 (1st Cir. 1984) (finding no general jurisdiction over defendant who advertised, employed eight sales representatives, and sold products in the forum state); *Ratliff v.*

*Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir. 1971) (finding no general jurisdiction over defendant who limited its activities in the forum state to selling and advertising). *See also Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1210 (10th Cir. 2001) ("[T]he mere placement of advertisements in nationally-distributed publications cannot be regarded as 'continuous and systematic' in nature."). The advertisement plaintiff cites to here is not sufficient to support general jurisdiction. In the absence of general jurisdiction the court must analyze whether Kansas may properly exercise specific jurisdiction over defendants.

3. Minimum Contacts; Specific Jurisdiction

For a court to exercise specific jurisdiction over a defendant, the suit must "arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers*, 2017 U.S. LEXIS 3873, at *11. For a court to be able to exercise specific jurisdiction over a claim, there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Id.* at 13. If the affiliation is lacking, specific jurisdiction is lacking, regardless of any of the defendant's unconnected activities in the State. *Id.* The defendant's relationship alone with a third party is not enough to convey jurisdiction. *Id.* at 15.

The Tenth Circuit uses a three-part test to determine if specific jurisdiction is warranted: (1) the out-of-state defendant must have "purposefully directed" its activities toward the resident of the forum state; (2) the plaintiff's injuries must "arise out of" the defendant's forum-related activities; and (3) exercise of personal jurisdiction

12

over the out-of-state defendant must be "consistent with traditional notions of fair play and substantial justice." *Gov't Benefits Analysts, Inc. v. Gradient Ins. Brokerage, Inc.*, 2012 U.S. Dist. LEXIS 71482, *23 (D. Kan. May 23, 2012). Parts one and two of the three-part test determine if the plaintiff demonstrates minimum contacts. *Id*.

A plaintiff must show "purposeful activities" in one of two ways: "purposeful direction" or "purposeful availment." *Shipp v. Int'l Auto Grp. of S. Fla., Inc.*, 2016 U.S. Dist. LEXIS 94973, *5 (D. Utah July 20, 2016). "Purposeful availment" is used most often in contractual suits and purposeful direction is most often used in tort suits. *Dudnikov*, 514 F.3d at 1071.  Regardless of which one is used, the Supreme Court holds that the goal of the doctrine is to prevent out-of-state defendants from being bound to appear before the court for merely "random, fortuitous, or attenuated contacts" with the forum state. *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Purposeful availment" analysis hinges on whether the "defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff . . . [and generally] requires . . . affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state." *Rambo v. Am. S. Ins.*, Co., 839 F.2d 1415, 1420 (10th Cir. 1988) (quotations omitted).  Minimum contacts must be demonstrated for each defendant over which the court exercises jurisdiction.  *Calder v. Jones*, 465 U.S. 783, 790 (1984).

In *Walden v. Fiore*, the Supreme Court clarified that *Calder v. Jones* illustrates that a "mere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it

shows that the defendant has formed a contact with the forum State." 134 S. Ct. 1115, 1125 (2014). The appropriate question is, "whether the defendant's conduct connects him to the forum in a meaningful way," not where the plaintiff suffered the injury. *Id*. *Walden* does not do away with the *Calder* effects test; it limits the holding by noting that foreign acts with foreseeable effects in the forum state will not always create specific jurisdiction. *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 623 (1st Cir. 2001).

To be consistent with due process, for jurisdiction to lie, the defendant's suit-related conduct create a substantial connection with the forum State. *Frickey v. Thompson*, 136 F. Supp. 3d 1300, 1308 (D. Kan. 2015). The due process limits principally protect nonresident defendant's liberties. It is not for the convenience of plaintiffs or even third parties. *Id*. Regardless of how significant the plaintiff's contacts with the forum may be, the defendant's contacts are the only decisive contacts when determining whether the defendant's due process rights are violated. *Id*. The plaintiff "cannot be the only link between the defendant and the forum" *Id*. at 1308-09.

    a. *Lilybrook Defendants – Schuepbach, Lilybrook Herefords, and Hans Ulrich*

Schuepbach, Lilybrook Herefords, and Hans Ulrich do not have sufficient "minimum contacts" with Kansas necessary for this court to exercise jurisdiction over them. The first step, as noted above, is whether the out-of-state defendant purposefully directed their activities at the resident of the forum state. *Gov't Benefits Analysts, Inc.*, 2012 U.S. Dist. LEXIS 71482, *23. The court agrees with plaintiff that the correct measure of specific jurisdiction in this case is purposeful direction because this a tortious claim

dispute. *See Dudnikov*, 514 F.3d at 1071.   Purposeful direction consists of: "(a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state." *JCM 082763, LLC v. Deterding*, No. 15-1167-EFM-GLR, 2016 U.S. Dist. LEXIS 6597, at *17 (D. Kan. Jan. 20, 2016).

Plaintiff contends that *Niemi v. Lasshofer*, 770 F.3d 1331 (10th Cir. 2014) and the present case are factually similar. In *Niemi*, plaintiff worked with the defendants to obtain a loan of $200-220 million dollars for helping fund a large-scale development project in Breckenridge, Colorado. *Id.* at 1338. Plaintiff authorized a formal loan request after negotiations requiring numerous emails, phone calls, and meetings.  *Id.*  Defendant Burgess sent dozens of emails explaining why the loan hadn't been released and claimed he was discussing the issue with co-defendant Lasshofer. *Id.* Eventually, plaintiff and Burgess traveled to Europe to meet with Lasshofer. *Id.*  Lasshofer and Burgess entered into a Joint Venture Agreement. The money used to commit the wire fraud was through a company associated with Lasshofer. *Id.* at 1339. Lasshofer did not contest that his actions were intentional. *Id.* at 1348. The court thus moved to the next two prongs:

> Mr. Lasshofer and his Innovatis group knew unquestionably from the documents, from his interaction with Burgess, and from his meetings and conversations with Mr. Niemi that Innovatis was participating or was alleged to have committed to participate in loans to entities in Colorado for the purpose of developing a resort at Breckenridge, Colorado. He was, beyond any question, aware of Mr. Niemi being a Colorado individual; one of his partners being a Colorado resident as well; the project being in Colorado; the loan funds were to be extended to and used in Colorado.

*Id*. The court held that Lasshofer was a primary participant in wrongdoing intentionally directed at residents of Colorado (the forum state). *Id*. at 1349-50, *i.e.*, Lasshofer purposefully directed his activities at the forum state. *Id*. at 1350.

The court in *Niemi* did find that the fraud was "expressly aimed at the forum state." However, Burgess and Lasshofer stood to profit from their relationship together and the perpetuation of the fraud. Further, Lasshofer did not contend his actions were not intentional, he knew of the interactions with Burgess, and he knew of the Colorado destination and plaintiff's Colorado residency. In short, Lasshofer knew there was fraud and knew a Colorado citizen would be harmed in Colorado.   In the present case, plaintiff contends that Lilybrook Defendants and co-defendants Peter Ulrich and Ulrich Hereford worked together. While the defendants all had specific limited roles in the chain of events that lead to plaintiff's purchase of the cattle, their actions, individually and collectively, are insufficient ot establish farud of any kind, let alone fraud directed at the forum state of Kansas.Unlike *Niemi*, there is no assertion that the Lilybrook Defendants would profit from their representations. Lilybrook did not receive any money or benefit (financial or otherwise) from the sale of cattle to plaintiff and there is not a contention to the contrary.

Plaintiff contends that the defendants knowingly worked with Peter Ulrich and Ulrich Hereford Ranch to sell cattle to Clov-Lan that were in poor health claiming defendants directed Clov-Lan to purchase more cattle from Ulrich Hereford Ranch, these making making assurances concerning the quality of the cattle. As noted above, the court must determine if the defendant's conduct substantially connects the

Lilybrook defendants to the Kansas. Plaintaiff claims he had a telephone with Schuepbach after a contract between the two fell through, which provides one connection to Kansas. Second, plaintiff asserts a widely-disseminated advertisement establishes another connection. Schuepbach might have foreseen that his representations could give rise to a law suit; however, this type of foreseeability is inadequate to support personal jurisdiction. A possibility of litigation, without more, would not give rise to a reasonable anticitpation of being haled into court there. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295-96 (1980); *Shrader v. Biddinger*, 633 F.3d 1235, 1244 (10th Cir. 2011); *Jenkins-Dyer v. Drayton*, 2014 U.S. Dist. LEXIS 148130, *9-10 (D. Kan. Oct. 16, 2014); *Eaves v. Pirelli Tire, LLC*, 2014 U.S. Dist. LEXIS 64866, 2014 WL 1883791 (D. Kan. May 12, 2014). For a defendant to intentionally direct its conduct at the forum state, there must be more than an allegation of an intentional tort. *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077-78 (10th Cir. 1995). Plaintiff does not allege any further contacts with Kansas by any of the Lilybrook Defendants. The contacts plaintiff alleges here do not support personal jurisdiction over the Lilybrook Defendants.

### b.  *Claresholm Veterinary Services*

This court does not have jurisdiction over CVS. Plaintiff contends that when CVS inspected the cattle, it did so negligently knowing the cattle would end up in Kansas, which is sufficient to establish personal jurisdiction over the defendant in Kansas. Plaintiff urges the court to reach a holding in accord with *Fullington v. Union Pac. Fruit*

*Express Co.*, 1989 U.S. Dist. LEXIS 2391 (D. Kan. Feb. 1, 1989). For the following reasons, this court declines to do so.

Plaintiff avers that an inspection of goods by someone from one state resulting in harm to a person in another state knowing that the goods will be shipped to the receiving state is sufficient to support jurisdiction in the receiving state. While citing *Fullington,* plaintiff overlooks *Haley v. Champion Int'l Corp.,* No. 99-2256-JWL, 2000 WL 1472880, at *3 (D. Kan. Apr. 21, 2000), which has more recently been followed in the the District of Kansas. *Auxier v. BSP Warehouse & Distrib.*, No. 11-2249-RDR, 2011 U.S. Dist. LEXIS 99600 (D. Kan. Sep. 6, 2011).

The facts in both *Fullington* and *Haley* are similar. In *Fullington*, the defendant inspected rail cars engaged in interstate travel. It negligently inspected the door, which fell and injured a Kansas citizen in Kansas. The defendant knew the train traveled through Kansas, but was not the ultimate destination). In *Haley* a defendant negligently supervised the loading of a tractor-trailer. The tractor-trailer overturned in Kansas, where plaintiff was injured The defendant knew the tractor-trailer would be going through Kansas but was not the ultimate destination. As previously mentioned above, foreseeability alone is not enough to suffice personal jurisdiction under the Due Process Clause. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S. Ct. 559, 566 (1980). The possibility that a product may cause an injury in Kansas is not enough to support a finding of personal jurisdiction. *Auxier*, No. 11-2249-RDR, 2011 U.S. Dist. LEXIS 99600, at *12 (D. Kan. Sep. 6, 2011). Although the cattle may have been

intentionally inspected by CVS, this is not provide a sufficient basis to exercise personal jurisdiction.[2]

### c.  Balog Auction

Nor does Balog does not have sufficient minimum contacts with Kansas for this court to exercise personal jurisdiction. Plaintiff contends that Balog purposefully directed its  cattle auction services to Kansas over the Internet sufficiently to allow this court to exercise personal jurisdiction.

A website may form the basis of personal jurisdiction. In deciding the jurisdiction issue, the court must look to the level and type of website activity. *Payless Shoesource, Inc. v. Genfoot Inc.*, 2004 U.S. Dist. LEXIS 19127, *9 (D. Kan. Sept. 21, 2004). The Tenth Circuit has adopted the analysis from the Western District of Pennsylvania's decision in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Pa. 1997).  *See Toytrackerz LLC v. Koehler*, 2009 U.S. Dist. LEXIS 44869 (D. Kan. May 28, 2009); *see also Capitol Fed. Sav. Bank v. E. Bank Corp.*, 493 F. Supp. 2d 1150 (D. Kan. June 29, 2007).  In

---

[2] Plaintiff has submitted a Surreply (Dkt. 69) claiming that recent discovery referencing telephone calls between plaintiff and CVS as to the health of the cattle. Plaintiff claims that this newly-discovered evidence scontradicts representations in CVS's motion. The court rejects this argument for two reasons. First, the court finds that the cited calls are not newly-discovered evidence which would support a surreply. All the calls involved either plaintiff of his designated expert; plaintiff should have been aware of the calls at the time of his May 27, 2017 response to CVS's motion. More importantly, the calls do not contradict the representations in CVS's motion that its only involvement in the sale of the cattle was to complete the certificate in Canada and that *after the sale* they reponded to calls from the plaintiff. (Dkt. 28, at 1, 4, 6-7). Because the calls occurred after the sale of the cattle, they are not relevant to the issue of whether CVS is subject to jurisdiction in Kansas. *See Schlumberger Tech. v. Greenwhich Metals*, 2008 WL 4758589, *4 (D. Kan. Oct. 28, 2008) (finding no purposeful availment on the basis of "after-the-fact communications [which] did not give rise to the cause of action").

*Zippo*, the court departed from the traditional rules of personal jurisdiction for internet cases in favor of a sliding scale approach. 952 F. Supp. at 1124. On one end of the scale, there is a passive website where the defendant merely posts information to the website and it is accessible to others from another jurisdiction. *Id.* A passive website is not enough to confer personal jurisdiction over the defendant. *Id.* On the other end of the spectrum, the defendant clearly does business through the internet by entering into contracts knowingly and repeatedly. *Id.* In the middle of the scale dwell websites allow the exchange of information through a host computer, and jurisdiction turns on the level of interactivity and the commercial nature of the exchange of goods that occurs on the website itself. *Id.*

Courts may exercise personal jurisdiction over a party outside of the forum when that party : "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Shrader v. Biddinger*, 633 F.3d 1235, 1240-1241 (10th Cir. 2011). An auction seller does not have control over the ultimate winner of the auction, maintenance of the website, or control over the targeted audience. *United Cutlery Corp. v. NFZ, Inc.*, 2003 U.S. Dist. LEXIS 21664, 20003 WL 22851946 at *4 (D. Md. Dec. 1, 2003); *Miche Bag, LLC v. Cook*, No. 2:09-CV-166TC, 2009 U.S. Dist. LEXIS 51673, at *7 (D. Utah June 17, 2009).

Plaintiff urges the court to follow *Dedvukaj v. Maloney*, 447 F. Supp. 2d 813 (E.D. Mich. 2006), an ionternet auction case, to a finding of jurisdiction. In *Dedvukaj*, the plaintiff, a resident of Michigan, successfully bid on paintings in an auction through the

website "eBay." 447 F. Supp. 2d 813, 817 (E.D. Mich. 2006). Upon winning, plaintiff communicated with defendants through emails, phone calls, verified payment terms, and sent a check for $649.20 to defendants at the listed address in Syracuse, New York. The payment was accepted. *Id*. The court reasoned that defendant transacted business in Michigan by: communicating through email and telephone; accepting the plaintiff's bid during the auction; sending notice and confirmation of the winning bid; confirming shipping charges for two items; and accepting payment. *Id*. at 818-19. The court held that on these facts, plaintiff presented a prima facie case that extended personal jurisdiction to the defendants under Michigan law. *Id*. at 819.

Unlike *Dedvukaj*, plaintiff did not communicate with Balog through emails, phone calls, verify payment terms, or even accept any money. The auction at issue took place in Canada, and plaintiff was in Kansas, so he attempted to place a bid through the auction website but was unsuccessful. Instead, DLMS, who is a third party retained for the auction, assisted plaintiff over the telephone by placing bids on cattle with the help of DLMS employee Whitney Bosovich, who was present at the auction. There was not any communication between plaintiff and any Balog employees until December 2016, well after the auction had concluded. Further, plaintiff did not discuss payment terms with Balog, but rather payment was through Peter Ulrich or Ulrich Hereford Ranch directly. Balog never received or accepted money from plaintiff, again because this was to be handled directly by Peter Ulrich or Ulrich Hereford Ranch. Because the facts of this case are distinguishable in the most significant respects from those in *Dedvukaj*, the court declines to reach the same outcome.

Next, plaintiff contends that Balog, through the use of DMLS's website, is a highly interactive website that allows buyers to "hear live audio of the auctions, watch live video of the cattle, read specific weight, age, gender, and breed information about each of the cattle sold, make live bids, and watch as other buyers bid." Several courts from other districts, including the District of Utah, have held that the interactive selling of goods over Internet auction sites does not, in and of itself, subject the defendant to the jurisdiction of the purchasers. *See, e.g., United Cutlery v. NFZ, Inc.*, 2003 U.S. Dist. LEXIS 21664 (D. Md. Dec. 1, 2003); *Machulsky v. Hall*, 210 F. Supp. 2d 531 (D.N.J. 2002); *Winfield Collection, Ltd. v. McCauley*, 105 F. Supp. 2d 746 (E.D. Mich. 2000); *Shamsuddin v. Vitamin Research Prods.*, 346 F. Supp. 2d 804, 810 (D. Md. Nov. 30, 2004); *see Miche Bag*, 2009 U.S. Dist. LEXIS 51673, at *6. This court finds the analysis from these courts to be persuasive and declines to find that Balog's website gives rise to jurisdiction.

Finally, plaintiff contends that Balog claims that it is "the most successful Purebred Livestock Auctioneer's [sic]" in North America and that by claiming it sells cattle across the United States, that this is enough to find Balog purposefully directs activities at Kansas. For personal jurisdiction in the internet context, the court places an emphasis on "the internet user or site intentionally directing his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there." *Tomelleri v. Medl Mobile, Inc.*, No. 2:14-CV-02113-JAR, 2015 U.S. Dist. LEXIS 55943, at *22 (D. Kan. Apr. 29, 2015).

In *Tomelleri*, a Kansas resident filed suit against a California corporation which developed software applications (apps) for smart phones and mobile devices. No. 2:14-

CV-02113-JAR, 2015 U.S. Dist. LEXIS 55943, at *3 (D. Kan. Apr. 29, 2015). Defendant maintained a website that was accessible worldwide. *Id*. The app allowed for individuals to access a catalogue of information about various fish species located in the United States, including Kansas. *Id*. at 4. The app contained images that plaintiff had copyrighted; defendant did not have permission to use the images. *Id*. at 5. Plaintiff produced an exhibit showing that the app had been downloaded in Kansas on 6,663 occasions. *Id*. at 6. The court reasoned that plaintiff did not specify how defendant directed electronic activity into Kansas because plaintiff did not allege that defendant engaged in communications or other interactions with Kansas users, and although the app had been downloaded, plaintiff did not contend that any Kansas resident had purchased a copy of the app. *Id*. at 24-25. Further, there was no manifestation of intent to do business in Kansas because nothing on the website specified Kansas. *Id*. at 25-26. Because there was not anything to suggest that defendant purposefully directed its activity at the forum state, the court held that it could not exercise specific jurisdiction over defendant. *Id*. at 26.

    In the present case, defendant Balog used a third party website to reach a potentially worldwide audience, but plaintiff, as in *Tomelleri*, could not specify how Balog directed electronic activity into Kansas. Balog does state that it sells cattle across the United States, but nothing further shows any directing of activity at Kansas, that any business is or has been conducted in Kansas, or even that Kansas was a location in which Balog was trying to do business. Because plaintiff could not show that Balog,

through its website, purposefully directed electronic activity in Kansas, this court may not exercise jurisdiction over Balog in this case.

### III. Conclusion

This court lacks personal jurisdiction over Lilybrook Herefords, Andy Schuepbach, Hans Ulrich, Claresholm Veterinary Services, and Balog Auction Services and, thus, need not consider the arguments concerning due process and notions of fair play and substantial justice. The court dismisses the aforementioned defendants without prejudice.[3]

IT IS ACCORDINGLY ORDERED this 24th day of July 2017, that defendants Lilybrook Herefords, Andy Schuepbach, Hans Ulrich, Claresholm Veterinary Services, and Balog Auction Services's Motions to Dismiss for Lack of Personal Jurisdiction (Dkt. 18, 27, 29, and 31) are granted. All claims against defendants are dismissed without prejudice.

_____s/ J. Thomas Marten_____
J. THOMAS MARTEN, JUDGE

---

[3] The court dismisses plaintiff's claims without prejudice. Thus, plaintiff may refile in a district that has personal jurisdiction over defendants. *See Arocho v. Nafziger*, 367 Fed. App'x 942, 951 n.10 (10th Cir. 2010) ("[W]hen a court lacks jurisdiction over a party, the proper disposition is dismissal without prejudice to permit refiling where personal jurisdiction may be exercised") (citing *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1216 (10th Cir. 2002)).